A01A0336. R. W. HOLDCO, INC. et al. v. SCI/RW HOLDCO, INC. et al.

(551 SE2d 825)

PHIPPS, Judge.

Rudolf Walther, a resident of Germany, owned Rudolf Walther Holding, GmbH, a German company that owned R. W. Holdco, Inc., a Georgia company (collectively appellants). On October 14, 1998, Alan Johnson, an officer of R. W. Holdco, directed Bradley Carr, an attorney at the law firm that represented Walther and R. W. Holdco, to incorporate SCI/RW Holdco, Inc., with Johnson as the sole initial officer and director. According to Carr, SCI/RW was formed to purchase real estate and other assets owned by R. W. Holdco.

On October 26, 1998, R. W. Holdco sold five parcels of unencumbered real estate to SCI/RW for $4,500,000, providing seller financing of $3,300,000. That same day, Palmetto Capital Corporation lent SCI/RW $2,200,000, a portion of which it used to pay the balance of the $4,500,000 purchase price. Palmetto received deeds to secure debt on two of the acquired properties: (1) 9.68 acres of land which has improvements known as the Gwinnett Market and Atrium Mall ("Atrium Mall"), and (2) 44.65 acres of undeveloped land known as the Springfield ("Springfield").

Walther later claimed that the sale of R. W. Holdco's assets was unauthorized. Appellants sued SCI/RW, alleging fraud in the sales transaction and seeking rescission and damages.[1] SCI/RW quitclaimed to R. W. Holdco its interest in the five parcels. Palmetto then intervened as a defendant, contending that it was a bona fide purchaser and therefore could not be divested of its security interest in the Atrium Mall and Springfield.[2] Appellants amended their complaint, adding a count for declaratory judgment that Palmetto had no valid interest in the two properties because it was not a bona fide purchaser. After a bench trial,[3] the court found in favor of Palmetto

---

[1] In a separate lawsuit, R. W. Holdco sued Johnson, Carr, Carr's law firm, an accountant, and an accounting firm, alleging fraud, breach of fiduciary duty, and professional malpractice.

[2] See *Roop Grocery Co. v. Gentry*, 195 Ga. 736, 745 (1) (25 SE2d 705) (1943) (grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser and is entitled to the same protection).

[3] SCI/RW did not participate in the trial and is not a party to this appeal, which was granted pursuant to OCGA § 9-11-54 (b).

and denied appellants' demand for rescission. On appeal, appellants contend that the trial court erroneously determined that Palmetto was a bona fide purchaser and that the conveyances from R. W. Holdco to SCI/RW were "presumptively valid under Georgia law." They also contend that the trial court erred in determining that equity supported its ruling. We affirm.

1. Appellants contend that the trial court erred in finding that Palmetto was a bona fide purchaser. They assert that Palmetto had actual knowledge of certain "facts"[4] that put it on inquiry notice, and that had the lender inquired further, Palmetto would have discovered appellants' interest in the real estate and the alleged fraud. They argue that Palmetto was negligent in not investigating further and therefore is not entitled to be protected as a bona fide purchaser.

A bona fide purchaser for value is protected against outstanding equitable interests in land of which the purchaser has no notice.[5] "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."[6] Whether the circumstances were sufficient to put Palmetto on notice of the alleged fraud and appellants' interests in the real estate was a question of fact to be determined by the trier of fact.[7]

[T]he findings of the trial court will not be set aside unless clearly erroneous and regard must be given to the trial court's opportunity to assess the credibility of the witnesses. OCGA § 9-11-52 (a). Moreover, the "clearly erroneous" test is in essence the same as the "any evidence" rule and appellate courts cannot disturb the findings of fact by the trial court if there is any evidence to support them.[8]

Appellants assert that the following "facts" collectively were suf-

---

[4] Appellants' brief does not support their contention of these facts or that Palmetto had knowledge of them. See Court of Appeals Rule 27 (c) (3). It is not the function of this court to cull the record on behalf of a party. *Bergmann v. McCullough*, 218 Ga. App. 353, 355-356 (3) (461 SE2d 544) (1995). "Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; . . . a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form." *Campbell v. Breedlove*, 244 Ga. App. 819, 821 (535 SE2d 308) (2000).

[5] *Dime Sav. Bank &c. v. Sandy Springs Assoc.*, 261 Ga. 485, 487 (4) (405 SE2d 491) (1991).

[6] OCGA § 23-1-17.

[7] *Dollar v. Dollar*, 214 Ga. 499, 503 (1) (105 SE2d 736) (1958); *Rivers v. BMW of North America*, 214 Ga. App. 880, 883 (1) (449 SE2d 337) (1994).

[8] (Citation and punctuation omitted.) *Gerald S. Mullis, P.C. v. Sikes*, 244 Ga. App. 368, 369 (2) (535 SE2d 533) (2000).

ficient to excite attention and put Palmetto on inquiry notice: (a) before closing, R. W. Holdco owned the real property pledged to secure SCI/RW's loan and a condition precedent to the loan closing was a transfer of the property to SCI/RW; (b) the actual borrower changed from R. W. Holdco to SCI/RW a few days before the closing with no reason given; (c) SCI/RW was organized just two weeks before closing; (d) Johnson was a principal officer of both R. W. Holdco and SCI/RW; (e) Walther was the CEO of R. W. Holdco, according to the Georgia Secretary of State; (f) Carr's firm was representing R. W. Holdco in the sales transaction, prepared the title insurance binder as agent for the title company, and gave an opinion letter in the capacity of counsel to SCI/RW, making therein no representations on R. W. Holdco's behalf; (g) Palmetto did not know the purpose of the loan; (h) SCI/RW was willing to pay interest of 16 percent per annum; (i) Palmetto had no prior relationship with Johnson, R. W. Holdco, SCI/RW, or Carr; and (j) the Atrium Mall and Springfield were unencumbered.

Appellants claim that had Palmetto inquired further, it would have discovered the following "facts": (a) the purpose of the loan was to provide SCI/RW with the cash portion of the purchase price of five pieces of real property; (b) SCI/RW was purchasing the Atrium Mall and Springfield for a combined cost of $3,307,602.83, half of the value of $6,200,000 assigned by Palmetto to the two parcels; (c) for tax purposes, the accounting firm had allocated $200 as the sales price for a restaurant/entertainment center located inside the Atrium Mall; (d) the agreement to purchase/sale assets between R. W. Holdco and SCI/RW was signed on October 26, 1998; (e) the Atrium Mall and Springfield were being sold at a loss to R. W. Holdco; (f) R. W. Holdco received only $1,200,000 from the sale and provided seller financing for the balance of the sales price; (g) R. W. Holdco took deeds to secure debt from SCI/RW on the same parcels encumbered by Palmetto; (h) an accountant with the accounting firm for R. W. Holdco served as SCI/RW's "president for the day" merely to sign the closing documents on behalf of SCI/RW; (i) SCI/RW was owned by a company based in the Channel Islands; and (j) SCI/RW was using $273,856.11 of the loan proceeds for purposes other than the sale.

Appellants further claim that had Palmetto asked to inspect written evidence of Johnson's authority to sell R. W. Holdco's assets, it would have discovered that R. W. Holdco's consent minutes and corporate resolution were over three months old at the time of closing, that the documents did not address the sales transaction specifically, and that the signature pages of the consent minutes were separate from the main text, contained no substantive language, and were typed in a different font than the pages containing the substantive language. They further point out that the consent minutes pur-

port to make Johnson's status as agent irrevocable, although the minutes give no interest to Johnson. Appellants urge that had Palmetto inquired further, it ultimately would have discovered R. W. Holdco's interest in Atrium Mall and Springfield, Johnson's lack of authority to transfer the real estate, and the lack of proper attestation on the warranty deeds conveying the parcels to SCI/RW.

The trial court's findings regarding Palmetto's practices and operations are not disputed. Palmetto is a "non-traditional, collateral lender," lending solely against real estate collateral rather than considering the borrower's creditworthiness or ability to repay. It does not require personal guarantees; it does require a deed to secure debt on property. Palmetto determines the value of the property to serve as collateral through its own analysis of what the property would bring if it had to be liquidated quickly; thus, its valuations are generally lower than fair market value estimates. Typically, it lends no more than 55 percent of the unencumbered value of the real estate and charges 16 percent interest on a loan with a duration not to exceed 35 months. Consistent with that lending criteria, Palmetto loaned SCI/RW $2,200,000 and required title insurance policies and valid first mortgages on real estate it had valued at $6,200,000.

In determining that Palmetto was a bona fide purchaser of the security interests, the trial court found that Palmetto did not have notice of Johnson's lack of authority to effect the sale, that further investigation by Palmetto would not have revealed any alleged lack of authority, and that Palmetto was not negligent by not investigating further. Carr's law firm provided to Palmetto's attorney a marked title insurance binder which represented that title on the Atrium Mall and Springfield had passed from R. W. Holdco to SCI/RW. Carr's law firm also provided to Palmetto's attorney a legal opinion stating that SCI/RW had duly authorized and executed the loan documents and that the documents were enforceable against the borrower. At trial, Carr confirmed that Palmetto was entitled to rely on the binder and the opinion.

As to any "irregularities" in the consent minutes or other corporate documents that appellants claim that Palmetto would have noticed, the trial court found that had Palmetto inquired further, it would have been presented with Carr's assurance that authority existed. According to Carr, lenders do not generally ask for corporate resolutions and consent minutes, although he has provided such verification when asked. Further, Carr confirmed that he had inspected the consent minutes and a corporate resolution provided to him by Johnson, and after inspecting the documents, he concluded that Johnson had authority to sell R. W. Holdco's assets.

Appellants also argue that under the "equal dignities" rule, because the transfer of R. W. Holdco's property to SCI/RW required a

writing, Palmetto should have realized that Johnson also needed written authority to sign the deeds on R. W. Holdco's behalf and should have asked to see such authority. But the record shows that Palmetto did require a showing of valid conveyances as a condition of the loan and relied on the opinion and the binder as proof of valid conveyances. Moreover, Johnson was granted authority by the consent minutes and the corporate resolution, although appellants contend that the documents were forged.

Citing *Greenpoint Sav. Bank v. Guiliano*,[9] appellants argue that because Walther did not authorize the underlying sales transaction, valid title did not pass to SCI/RW and therefore the deeds to secure debt are void. But that argument, based on authority from a foreign jurisdiction and addressing different facts, is contradicted by controlling precedent from our Supreme Court: a bona fide purchaser for value is protected against outstanding equitable interests in land of which the purchaser has no notice.[10]

We conclude that the trial court's factual findings were not clearly erroneous. Therefore, we will not disturb its determination that Palmetto was a bona fide purchaser.

2. Appellants contend that the trial court erred in holding that the conveyances from R. W. Holdco to SCI/RW were "presumptively" valid under OCGA § 14-5-7 (a), which provides:

> Instruments executed by a corporation conveying an interest in real property, when signed by the president or vice-president and attested or countersigned by the secretary or assistant secretary . . . shall be conclusive evidence that the president or vice-president of the corporation executing the document does in fact occupy the official position indicated; that the signature of such officer subscribed thereto is genuine; and that the execution of the document on behalf of the corporation has been duly authorized. . . .

Appellants point out that while Johnson, as R. W. Holdco's vice president, signed the warranty deeds, his signatures were not attested or countersigned by another officer of the company. They argue the warranty deeds therefore are not "conclusive" evidence of Johnson's authority and Palmetto should have inquired further into his authority.

While we agree that the warranty deeds are not conclusive evidence of Johnson's authority under OCGA § 14-5-7 (a), we do not find reversible error. First, Palmetto did not rely on the warranty deeds,

---

[9] 238 AD2d 472 (656 NYS2d 646) (App. Div. 1997).

[10] *Dime Sav. Bank*, supra, 261 Ga. at 487.

but instead relied on the opinion of counsel and the marked insurance binder, both representing that title had passed from R. W. Holdco to SCI/RW. Second, we determined in Division 1 that Palmetto was a bona fide purchaser in this case, and therefore the alleged fraud, which appellants contend includes improperly attested warranty deeds, will not divest Palmetto of its interest in the properties.[11]

3. Appellants contend that the trial court erred in holding that equity supported its ruling. They urge that the trial court failed to take into account the damages they suffered by Palmetto's taking a deed to secure debt on the real estate. They maintain that Palmetto took a risk without sufficient investigation and point out that Palmetto obtained title insurance. We find these arguments unpersuasive.

First, we have determined that Palmetto is entitled to the protections of a bona fide purchaser, and "[a] bona fide purchaser for value without notice of an equity will not be interfered with by equity."[12]

Second, we note that the trial court ruled that appellants are estopped from seeking rescission of the deed to secure debt because they had received approximately 85 percent of the net loan proceeds, a finding not disputed by appellants. Further, the trial court relied on OCGA § 23-1-14, which provides that when one of two innocent persons must suffer by the acts of a third person, the one who put it in the power of the third party to inflict the injury should bear the loss. Determining that Palmetto was a stranger to the individuals involved — Johnson, Carr, and the accountant — who were appellants' agents, the trial court concluded that equity required that as between Palmetto and appellants, appellants must bear the loss for any alleged fraud by their agents.

Appellants' contention is without merit.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 5, 2001.

*Smith, Gambrell & Russell, Rex M. Lamb III, Elizabeth L. Branch*, for appellants.

*Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood, Richard K. Hines V,* for appellees.

---

[11] See OCGA § 23-1-20; *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 917 (2) (423 SE2d 257) (1992).

[12] OCGA § 23-1-20; see *Tower Financial*, supra.