A04A0478, A04A0479. R. W. HOLDCO, INC. v. JOHNSON et al. (two cases).
A04A0480. ANDERSEN, DAVIDSON & TATE, P.C. et al. v. R.W. HOLDCO, INC.
A04A0481. MOORE STEPHENS TILLER, LLC et al. v. R.W. HOLDCO, INC.

(601 SE2d 177)

SMITH, Chief Judge.

R.W. Holdco, Inc. ("Holdco") brought this action against a former employee and officer, its former attorneys, and its former accountants, to recover damages arising from the allegedly unauthorized sale of Holdco's assets. The trial court granted partial summary judgment to the defendants. In the main appeals[1] Holdco challenges the grant of partial summary judgment to appellees. We find that the grant of partial summary judgment was correct, and we affirm.

In separate cross-appeals, Holdco's former attorneys, Andersen, Davidson & Tate, P.C. and R. Bradley Carr (collectively "ADT"), and Holdco's former accountants, Moore Stephens Tiller, LLC and Gregory Hayes (collectively "MST"), challenge the trial court's findings that Holdco pled a sufficient claim for civil conspiracy to defraud and that any such claim was still viable. In addition, in Case No. A04A0480, ADT challenges the trial court's failure to grant its motion for summary judgment as to Holdco's claim for professional negligence and on the remedies of attorney fees and costs under OCGA § 13-6-11 and punitive damages. Further, in Case No. A04A0481, MST appeals the trial court's denial of its motion for summary judgment on its affirmative defense of ratification. We conclude that summary judgment was warranted on these issues, and we reverse.

The record shows that Holdco, a holding company for various businesses and real estate holdings in Georgia, is wholly owned by

___

[1] Case Nos. A04A0478 and A04A0479 appear to be identical. The notice of appeal in Case No. A04A0478 was filed on April 29, 2002. The notice of appeal in Case No. A04A0479 was filed on May 1, 2002, after the trial court corrected a clerical error in its April 26, 2002 order granting partial summary judgment by entering a new order on April 30, 2002.

Rudolf Walther, a German citizen with business interests throughout the world. In 1996, Walther hired Alan Johnson to handle all his interests in America. Johnson was titled executive vice president of Holdco, but essentially he performed all functions usually performed by the president and CEO of a corporation. In 1996, Johnson retained ADT to handle several legal matters, including a merger of companies and the formation of Holdco. ADT handled the transfer of Walther's shares in Holdco to Rudolf Walther Holding AG (the AG company), a German holding company governed by a three-member board of directors consisting of Karl Frank, Walter Schneider, and Werner Falke. The board of directors in turn was supervised by a multimember supervisory board, over which Walther presided. Late in 1996, Johnson also hired MST to perform accounting and tax services for Holdco on an as-needed basis.

Over approximately the next two years, at Walther's direction, all communication between Holdco and ADT was through Johnson. Similarly, other than an initial meeting with Johnson and his German supervisor, Frank, all contact between Holdco and MST was through Johnson. It is undisputed that Walther never actively participated in Holdco's business affairs. Walther testified that he could not be bothered with the operations of his companies; he left operations to his managers and never "checked up" on them. He also testified that Frank was the only one in his organization who supervised Johnson.

Some time in 1997, Johnson informed ADT that Holdco was experiencing financial problems and that Walther's companies worldwide owed a substantial amount to both U. S. and German taxing authorities. In the spring of 1998, Johnson met with ADT and a bankruptcy law firm to discuss the possibility of placing Holdco into receivership. Johnson also spoke to Hayes at MST regarding Walther's cash flow problems. At Johnson's request, Hayes approached several banks about the possibility of loans against some Walther properties in Georgia, but the banks were not willing to extend even secured loans to Holdco.

In the spring of 1998, ADT drafted consent minutes reflecting a proposed receivership. These consent minutes were revised at Johnson's office and sent to Germany, where they were signed and returned to Johnson. ADT did not contact Walther about this transaction or any subsequent transaction. Walther did not expect or require ADT to verify his signature.

In May 1998, the AG company's supervisory board, including Walther, met with the three directors, expressing concern about Holdco's profitability and the possibility that the tax matters could lead to investigations of tax fraud. A member of the supervisory board then suggested offering the entire USA investment for sale. On July

6, 1998, Walther called a special meeting of the supervisory board. At the meeting, "[c]orporate minutes were prepared . . . for the purpose of appointing a receiver or effecting the sale of corporate assets." These minutes bore the signature of directors Walther, Frank, and Falke. They provided that Holdco's assets should be "sold immediately and as quickly as possible," and that "the shareholder and director further understand and accept the fact that any of all current employees, including officers of RW Holdco, Inc., may have the right to be part of any sale as seller or buyer."

Johnson considered these minutes as a "blanket authorization" to act on Walther's behalf, and he did not believe that new consent minutes tailored to reflect a particular transaction were necessary. He gave ADT the consent minutes, informing them that "this is what Walther wants to do and . . . we're going to do it and we have to do it."

In late July 1998, however, after these consent minutes had been executed, Walther changed the structure of the company that was Holdco's parent from one form of business organization cognizable under German law (an "AG" company) to another form of business organization also recognized in Germany (a "GmbH corporation"). Walther eliminated the three-member board and the multimember supervisory board and named himself as sole shareholder and director. Also, as of July 31, 1998, Walther terminated two of the three AG company's directors, Frank and Schneider. He told Johnson about the terminations but instructed him not to disclose the terminations to anyone. Neither Johnson nor Walther ever informed ADT or MST of the terminations or the change in corporate structure of Holdco's parent company.

In October 1998, Johnson informed both ADT and MST that he had found a buyer for Holdco's assets. ADT handled the closing, but it was not asked to advise Holdco regarding the sale and purchase or its implications, and it did not participate in negotiating terms, conditions, or price. ADT requested that Hayes, of MST, act as president of the buyer corporation for purposes of the closing only, since the purchaser was a corporation called Solid Combustible Ireland, which was based in the Channel Islands and did not wish to incur the expense of sending someone to the closing. Hayes agreed because he understood from ADT that its client, Holdco, wanted the transaction to go forward and that the deal had been properly authorized in writing.

ADT incorporated SCI/RW Holdco, Inc. (SCI) in Georgia for Solid Combustible and assisted in two closings: closing the loan between Palmetto Capital Corporation and SCI, where it represented SCI after obtaining Johnson's consent and waiver on behalf of Holdco, and the sale closing, where it then represented Holdco. Although the consent minutes authorized Johnson to sell Holdco's assets, ADT took

the extra precaution of confirming Johnson's authority by preparing a certificate of corporate resolution of the AG company, which ADT believed was still Holdco's parent company, verifying the continuing validity of the previously adopted resolution. The final version of this certificate authorized the sale of Holdco's assets on terms and conditions considered necessary or appropriate by Johnson, as executive vice president of Holdco.

The certificate was sent to Frank for signature, and he signed it "as of July 9, 1998," the date on which the consent minutes were originally approved and signed, leading ADT to believe Frank had authorized the sale on behalf of Walther. In reliance on the consent minutes and the certificate, ADT closed the sale. Hayes sat in and signed the documents as the newly-appointed president of SCI. Johnson signed the documents in his capacity as executive vice president of Holdco, and Carr presided over the closing as counsel for Holdco. Hayes then immediately resigned as president of SCI, and Johnson became the sole officer and director of SCI. *R.W. Holdco v. SCI/RW Holdco*, 250 Ga. App. 414 (551 SE2d 826) (2001).

ADT alleged that it first learned on the day after the closing that Walther claimed the sale was unauthorized, when Walther's representatives from Germany contacted the firm. Two days later, Holdco, along with Walther and the GmbH parent company, filed suit against SCI in Gwinnett County seeking rescission of the transaction, which resulted approximately four months later in the return of Holdco assets by consent. But Holdco did not return or offer to tender the loan proceeds of $1,087,855 to SCI or to Palmetto to complete the rescission. Instead, it retained these proceeds, using them for its own business purposes. In addition, $425,000 was placed in escrow for Holdco's benefit, to pay any tax liability to the IRS in the ongoing audit. The remaining cash was disbursed to Holdco to use for general business purposes. MST was paid $40,000 from the proceeds, which was applied to its bill for professional services. Holdco never challenged the bill or the payment. Similarly, ADT received payment of $100,000 from the proceeds, applied to its bill for previously rendered professional services and the costs anticipated in the upcoming trial. Holdco likewise never challenged this bill or the payment.

Holdco made no payments to Palmetto on the promissory note, although it agreed to make monthly interest payments of $29,333 on the note to protect its property from foreclosure. When Palmetto intervened in the Gwinnett lawsuit, Holdco added a claim against Palmetto. In the Gwinnett action, the trial court found that Palmetto, as SCI's lender, had a valid security interest in Holdco's properties, that Holdco must pay the mortgages, and that Holdco had benefitted

directly from its retention and use of the loan proceeds. The Gwinnett County trial court's ruling was appealed to this court and affirmed in *Holdco*, supra.

Holdco filed this action against Johnson, ADT, and MST in Fulton County. The complaint sought recovery under eight counts: three counts of breach of fiduciary duty, against Johnson, ADT and MST; two counts of professional negligence, against ADT and MST; one count against all defendants of fraud and aiding and abetting fraud; one count seeking punitive damages against all defendants; and one count seeking expenses of litigation and attorney fees under OCGA § 13-6-11.

ADT and MST filed motions for summary judgment, which the trial court granted in part and denied in part. The trial court granted summary judgment to both firms as to Holdco's claim for breach of fiduciary duty and Holdco's claims for fraud and aiding and abetting fraud. The trial court also granted summary judgment to MST on Holdco's claim for attorney fees and expenses and on Holdco's claim for punitive damages. The trial court denied summary judgment to MST and ADT on their defenses of actual authority, apparent authority, and ratification. The court found that Holdco had also stated a claim for civil conspiracy to defraud, but because the defendants had not moved "particularly" for summary judgment on this claim, it was not granted.

### Case Nos. A04A0478, A04A0479

We note initially that although Holdco asserted claims for fraud, breach of fiduciary duty, and professional negligence, most, if not all, claims in the underlying action depend for their resolution primarily on whether Johnson was clothed with apparent authority to sell Holdco's assets in the transaction in issue. Although we address each claim separately, our analysis focuses on Johnson's apparent authority.

1. Holdco first contends the trial court erred in granting summary judgment to MST and ADT on its claim for breach of fiduciary duty. We do not agree.

(a) OCGA § 23-2-58 provides that a relationship is deemed confidential when "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." It is well established that "[t]he party asserting the existence of a confidential relationship has the burden of establishing its existence." (Citation and footnote omitted.) *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 531 (583 SE2d 203)

(2003). Of course, ADT's legal representation of Holdco created a fiduciary relationship between them. *D.C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 595-596 (562 SE2d 746) (2002).

Holdco's argument on its claim against ADT for breach of fiduciary duty is based upon the allegation that ADT failed to disclose information regarding the transaction to Walther, "RW Holdco's owner." But ADT did make the proper disclosures, albeit to Johnson and Holdco's apparent parent company, the AG company. Over the approximately two years ADT had been dealing with Holdco, the firm conducted its legal services for Holdco in the same manner. All matters were cleared through Johnson, whom Walther, according to Walther's own testimony, had clothed with authority to conduct business for Holdco. "Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon." (Citation and punctuation omitted.) *Bresnahan v. Lighthouse Mission*, 230 Ga. App. 389, 391 (1) (496 SE2d 351) (1998). During this time period, Walther was not a member of the board of directors of the AG company; he did not have authority to act for Holdco or approve or authorize transactions. Instead, he held out Johnson as Holdco's authorized agent and the AG company as Holdco's parent company. ADT relied upon that apparent authority.

Relying on the information it was given, ADT exercised prudence and caution in verifying the sale of Holdco's assets with the AG company, which it still believed was Holdco's parent corporation. In fact, Walther *intentionally withheld* from ADT the information that he had changed the corporate structure, that the AG corporation had been dissolved and was no longer the sole shareholder of Holdco, and that he now exercised control. Indeed, if concealment of material facts is an issue in this case, it is Holdco's own concealment of the material facts that caused the problem. Failure to check with Walther regarding the transaction was attributable entirely to Walther's failure to notify or inform ADT that the situation had changed.

Moreover, ADT did not reap "significant benefits" from the transaction, as Holdco maintains. It was paid only its previously accrued and unpaid bill for professional services out of the proceeds. The trial court did not err in granting summary judgment to ADT on Holdco's claim for breach of fiduciary duty.

(b) Holdco also claims breach of fiduciary duty on the part of MTS. The case law in Georgia is silent as to whether a fiduciary relationship exists between accountant and client. Holdco relies upon *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376 (297 SE2d 473) (1982) in support of its proposition that the relationship between

accountant and client is fiduciary. In *Singer*, in the context of determining whether a restrictive covenant in an accountant's employment contract would be upheld, the Georgia Supreme Court stated that the firm had placed Singer in a position of trust and confidence, and because of that placement Singer had gained a degree of trust, confidence, and rapport with the clients. Id. at 377. But the dispute in *Singer* was not between accountant and client; it was between an accounting firm and its former employee. Moreover, the court found that the covenant was overbroad and unenforceable. Id. at 377-378 (1). The court's statement in *Singer* regarding the relationship being one of trust and confidence is therefore mere dictum.

Here, the trial court found that "the evidence of record is insufficient to create a factual dispute as to whether MST . . . exercised a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." We agree. Contrary to Holdco's contention, no evidence exists that MST exercised a controlling interest over the will of Holdco, as required under OCGA § 23-2-58 for a fiduciary relationship to arise.

We need not decide the broad question of whether the accountant/client relationship necessarily gives rise to a fiduciary duty, however, because even if a fiduciary relationship exists in this case, Holdco has shown no breach. In regard to this transaction, MST was not in possession of material facts it could have disclosed. It did precisely what it was told Walther wished done. It did not recommend the transaction. It did not counsel Holdco on the wisdom of entering into the transaction. It provided no investment advice. The only action taken by MST with regard to the sale of Holdco's assets was having Hayes sit in as president of the buyer corporation at the closing of the sale for the parties' convenience, at the request of Johnson and Holdco's attorneys. Because Holdco did not offer any evidence to the contrary, the trial court correctly granted summary judgment to MST on Holdco's claim for breach of a fiduciary relationship.

2. Holdco also asserts error in the trial court's grant of summary judgment to the professional firms on its claim for fraud and aiding and abetting fraud. We do not agree.

(a) Holdco correctly notes that "Georgia courts have consistently held that the concealment of a material fact when one is under a duty to speak constitutes fraud," as does suppressing material facts when a party is under obligation to communicate them. Holdco therefore contends that its claim of fraud was established based upon the firms' duty to speak and their fraudulent concealment of the sale of Holdco's assets. But Holdco is the one asserting the claim, and Holdco was definitely aware of the material facts underlying the purchase and

sale of its assets. Although Holdco asserts that the duty to disclose was owed to "Holdco's owner" (Walther), Walther is not a party to this action, and Holdco is a corporation wholly separate from Walther. *Hickman v. Hyzer*, 261 Ga. 38, 39 (1) (401 SE2d 738) (1991) ("The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders. [Cit.]"). Although Walther may not have been aware of the sale, we have determined in Division 1, supra, that his lack of knowledge is attributable to his own failure to disclose material facts to the firms.

Holdco alleged in the complaint that Johnson committed fraud, but as to the firms, it alleged only that they "aided, abetted, and assisted" Johnson in defrauding Holdco. The only particulars alleged by Holdco are the firms' failure to inform Walther of the sale and their assumption that Johnson was properly authorized to enter into the transaction. Because Johnson had apparent authority to do so, this claim must fail.

(b) In response to the defendants' motion for summary judgment Holdco alleged, for the first time, that the firms had themselves committed actual fraud. Notice pleading is the rule in Georgia, and under OCGA § 9-11-9 (b), allegations of fraud must be pled with particularity. "It is well settled that a general allegation of fraud . . . amounts to nothing — it is necessary that the complainant show, by specifications, wherein the fraud consists. Issuable facts must be charged." (Citations, punctuation and emphasis omitted.) *Candler v. Clover Realty*, 125 Ga. App. 278, 280 (187 SE2d 318) (1972). In fact, Holdco's "completely new claim made for the first time in response to the motion for summary judgment does not satisfy even the liberal requirements of the Georgia Civil Practice Act . . . for notice pleading" because the complaint was not amended to add a new claim of actual fraud against the firms, nor were the firms "given reasonable notice of the claim [or] opportunity to frame a responsive pleading to the claim." *Jahannes v. Mitchell*, 220 Ga. App. 102, 104 (1) (469 SE2d 255) (1996). It follows that at the time summary judgment was awarded on this claim, no viable claim for actual fraud existed against the firms. Id. Although the trial court did not grant summary judgment on this basis, "a judgment right for any reason will be affirmed on appeal." (Citation, punctuation and footnote omitted.) *Hall v. Coleman*, 264 Ga. App. 650, 653 (1) (592 SE2d 120) (2003).

3. In Holdco's final enumeration, it maintains the trial court erred in granting summary judgment to MST on its claim for punitive damages. The trial court found that the negligence claims that survived summary judgment presented no facts supporting punitive damages. Holdco argues that it presented evidence sufficient to show that MST "acted with that entire want of care which would raise the presumption of conscious indifference to consequences and . . . with

intentional disregard of the rights of RW Holdco." Holdco correctly states that under Georgia law, punitive damages are recoverable in cases involving professional malpractice. *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646, 649 (6) (518 SE2d 704) (1999). But Holdco points only to MST's failure to inform Walther of the sale and Hayes's participation in the closing as evidence of MST's "conscious indifference." We have determined that any "failure" to notify the proper party of the sale and Hayes's participation in the closing were not breaches of any duty and were attributable to Holdco's and Walther's own failure to apprise the accountants that the AG company was no longer Holdco's parent company and was not authorized to approve the sale. It follows that punitive damages were not recoverable and that the trial court did not err in granting summary judgment to MST on this issue.

### Case Nos. A04A0480, A04A0481

4. In their separate cross-appeals, both ADT and MST contend the trial court erred in finding that Holdco stated a claim for conspiracy to defraud and that such a claim was still viable. We agree and reverse.

First, the conspiracy to defraud claim is not encompassed within the claim made by Holdco in its complaint that the firms "aided and abetted" Johnson in committing fraud. In response to cross-appellants' motions for summary judgment, Holdco argued for the first time that the firms had committed actual fraud, see Division 2, supra, and that they participated in a civil conspiracy to commit fraud. Over the firms' objections, the trial court permitted the conspiracy claim to survive summary judgment on the rationale that "[d]efendants have not moved for summary judgment particularly on this theory." But even assuming a defendant must move for summary judgment on a theory not timely raised by the plaintiff, a trial court may grant a summary judgment on its own motion. See *Solon Automated Svcs. v. Corp. of Mercer Univ.*, 221 Ga. App. 856, 859 (3) (a) (473 SE2d 544) (1996).

We note, too, that

[a]ccurately speaking, there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. While the crime of conspiracy may be committed without doing any overt act in pursuit of the combination, no civil liability is incurred for the conspiracy, but only for the overt acts of the conspirators. Where civil liability for a

conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action.

(Citations, punctuation and emphasis omitted.) *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 297 (1) (443 SE2d 833) (1994). Here, we have determined that summary judgment was proper as to the claims of fraud and aiding and abetting fraud. The trial court therefore erred in denying the firms' motions for summary judgment on Holdco's conspiracy claim.

5. In its cross-appeal, ADT contends the trial court erred in denying its motion for summary judgment on Holdco's claim for professional negligence or malpractice. The trial court held that a jury issue existed on this claim because written authority for the transaction was required for the sale of Holdco's real estate assets under the "equal dignities" rule, and the consent minutes were "arguably irregular."

ADT argues that the Gwinnett court in *Holdco* found no facial irregularity in the documents, stating that if the *lender's* attorney had "requested copies of the underlying documents, he would have received the Consent Minutes and corporate resolutions which on their face provide no basis to challenge the existence of proper authority." See *Holdco*, supra, 250 Ga. App. at 417.

ADT also argues that none of the "arguable irregularities" referred to by the trial court was sufficient to place ADT on notice that Johnson lacked authority, "in light of the surrounding circumstances, the parties' prior course of dealing, Holdco's financial crisis, and Holdco's failure to communicate any limitations on either Johnson's or Frank's authority."

The trial court found that the consent minutes were "arguably irregular" because they "did not address the terms of sale, had a separate signature page and were back dated to July 9, 1998." We do not agree.

The minutes could not have addressed the terms of sale, because no buyer had yet been found; the minutes themselves "demanded" the "immediate sale" of substantially all of Holdco's assets. The fact that Frank's signature appeared on a separate page would not have placed ADT on notice of an "irregularity" because many of the previous minutes also had separate signature pages. Moreover, Frank was known to ADT to have "control" over Johnson; ADT had no knowledge that Frank's control over Johnson and Johnson's authority to sell Holdco's assets was no longer valid. To the contrary, ADT had the right to assume Frank's and Johnson's authority continued.

[T]he termination of authority does not thereby terminate apparent authority. . . . If there was apparent authority

previously, its existence is unaffected until the knowledge or notice of the termination of authority comes to the third person, except when all agency powers are terminated without notice by death, loss of capacity by the principal or an event making the authorized transaction impossible.

(Citations and punctuation omitted.) *Clark v. Perino*, 235 Ga. App. 444, 448 (509 SE2d 707) (1998). This is particularly true because, throughout the course of ADT's dealings with Holdco, Walther had never before restricted or questioned Johnson's authority.

Because ADT rightfully assumed the transaction was properly authorized, the "backdating" of the minutes was not "irregular." ADT reasonably believed that the minutes were dated July 9, 1998 because they simply reconfirmed the sale resolution the Board passed "as of" July 9, 1998. We have no difficulty in deciding that ADT was justified in relying upon the documents; they were not "irregular."

Even if the documents had been "arguably irregular," however, Holdco and Walther would be estopped from denying Johnson's and Frank's authority. A principal is estopped from proving "that the agent's authority was, in fact, less extensive than that with which he apparently was clothed." *Interstate Fin. Corp. v. Appel*, 134 Ga. App. 407, 411 (215 SE2d 19) (1975). Estoppel occurs when

the third party dealt with the agent in reliance upon the authority which the principal has apparently conferred upon him and . . . a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent had authority to perform a particular act and deals with the agent upon that assumption.

(Citations and punctuation omitted.) Id. That was the case here. Holdco is therefore estopped from denying Johnson's and Frank's apparent authority, and the trial court erred in denying ADT's motion for summary judgment on Holdco's claim for professional malpractice.

6. ADT also contends that the trial court erred in denying summary judgment to it on the remedies of attorney fees and costs under OCGA § 13-6-11 and punitive damages. The trial court's amended order apparently was intended to clarify any ambiguity in the original order regarding whether the court granted summary judgment as to these remedies in favor of MST but denied summary

judgment as to them in favor of ADT.[2] ADT argues that it is entitled to summary judgment on Holdco's claims for remedies under OCGA § 13-6-11 and for punitive damages, and we agree.

We have decided that the trial court was correct in granting summary judgment to the firms on Holdco's claims of breach of fiduciary duty and fraud. We have also decided that ADT should have been granted summary judgment on Holdco's claim for professional negligence. It follows that no claims remain against ADT as to which either attorney fees and expenses or punitive damages may be awarded. *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 801 (2) (522 SE2d 739) (1999).

7. In its separate cross-appeal, MST maintains the trial court erred in denying its motion for summary judgment as to all claims, because the undisputed facts show that Holdco, with full knowledge of all facts, ratified the transaction. We agree.

It is undisputed that several months after the sale, on January 11, 1999, SCI voluntarily returned the assets conveyed to it by Holdco. Although Holdco sought rescission and now had possession of the property it sold in the transaction, Holdco refused to return the cash proceeds to SCI or Palmetto. Instead, it retained the proceeds of the transaction, spending them for its own corporate purposes. $425,000 was placed in escrow for Holdco's benefit to pay any tax liability it might owe.[3] In addition, MST was paid $40,000 and ADT was paid $100,000 out of the proceeds, for professional services previously rendered. Neither payment was challenged by Holdco. After the return of the property, Holdco made no further payments to Palmetto under the note. It agreed to interest payments to protect the property against foreclosure, but added a claim against Palmetto in its Gwinnett County lawsuit.[4]

The trial court ruled that Holdco's undisputed retention of the proceeds did not constitute ratification as a matter of law. The court reasoned that the loan transaction and the sale transaction could be viewed as separate events, and even though Holdco "arguably" may have ratified the loan transaction by retaining the proceeds, it did not

---

[2] Although ADT argues that the trial court's ruling was "based on the reasoning that ADT had not explicitly stated in its motion that it was moving for summary judgment on those specific damages," no reason appears in the orders for denying ADT summary judgment as to these remedies.

[3] The tax matter was later resolved for less than this amount. The tax liability was paid and the remainder of cash in the escrow account was disbursed to Holdco and spent for its own purposes.

[4] As previously discussed, the Gwinnett County court ruled that it would be inequitable to permit Holdco to "rescind" the transaction yet avoid the security interest given to Palmetto in the same transaction, given that Holdco had accepted and spent the majority of the loan proceeds. The trial court's ruling was affirmed on appeal. *Holdco*, supra, 250 Ga. App. at 419 (3).

ratify the sale transaction because to be effective, ratification of a real estate transaction must be in writing, and the firms had not shown partial performance sufficient to satisfy the Statute of Frauds.

But Holdco was not even a party to the loan transaction between SCI and Palmetto. It follows that it could not ratify that transaction. It was through the purported rescission of the sale transaction that Holdco received both the assets sold and the loan proceeds, which were part of the sales price.

It is beyond cavil that to rescind a contract for fraud, "the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." OCGA § 13-4-60. As this court aptly held in *Corbitt v. Harris*, 182 Ga. App. 81, 82 (354 SE2d 637) (1987), overruled on other grounds, *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991), "[t]o effect a complete rescission, all the parties must be returned as nearly as possible to the *status quo ante*; there is no room for one party to have its cake and eat it, too." Even when corporate officers act beyond the scope of their authority in a transaction, when the corporation receives and retains the fruits of that transaction while knowing the material facts, it has ratified its agents' actions. *Western American Life Ins. Co. v. Hicks*, 135 Ga. App. 90, 91 (3) (217 SE2d 323) (1975). Ratification operates retroactively, so that the agents' conduct was authorized as if consented to from the beginning. OCGA § 10-6-52. And ratification operates as to all participants in a transaction, placing those parties who transact with the corporate agents in the same position they would have occupied had the principal authorized the transaction to begin with. *Lipsey Motors v. Karp Motors*, 194 Ga. App. 15, 17 (1) (389 SE2d 537) (1989). We cannot agree with the trial court that the firms' actions were "independent" or simply "collateral" to the transaction, and that ratification would not extend to them. If Holdco ratified Johnson's acts, it is as if the transaction was authorized from the start. It follows that Holdco must also have ratified the firms' actions which led to or facilitated the transaction.

Nor do we agree with the trial court that the "equal dignity" rule prevents a ratification that was not in writing. That rule applies to real estate transactions only when they are not fully executed, because the Statute of Frauds will not apply to fully executed real estate sales contracts. OCGA § 13-5-31 (1). *Holland v. Shackelford*, 220 Ga. 104, 110 (1) (137 SE2d 298) (1964). The contract here was fully executed. Holdco transferred title to the purchaser and received the agreed-upon consideration. It was therefore error for the trial court to apply the "equal dignity" rule.

Finally, even if the "equal dignity" rule applied, "while a written instrument may have been executed by an agent not having any

authority in writing to do so or not having been ratified by an act of comparable dignity, the principal may nevertheless be estopped by his acts from denying the act of [its] agent." (Citations and punctuation omitted.) *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134 (4) (345 SE2d 330) (1986). Holdco was estopped from denying Johnson's authority by its subsequent act of retaining the fruits of the sale. Because of this estoppel, Holdco's retention of the proceeds ratified the transaction. The trial court erred in denying summary judgment to MST on its affirmative defense of ratification.

*Judgments affirmed in Case Nos. A04A0478 and A04A0479. Judgments reversed in Case Nos. A04A0480 and A04A0481. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 15, 2004 — 

*Smith, Gambrell & Russell, Marcia M. Ernst, Edward H. Wasmuth, Jr., William V. Hearnburg, Jr., John G. Despriet, Sutherland, Asbill & Brennan, John A. Chandler*, for appellant.

Alan E. Johnson, *pro se.*

*McKenna, Long & Aldridge, Anthony W. Morris, Amelia T. Rudolph, Patricia A. Gorham, Joseph A. White*, for appellee.