### A11A0824. CAMPBELL v. THE LANDINGS ASSOCIATION, INC.
(716 SE2d 543)

MIKELL, Judge.

Frederick M. Campbell appeals from the trial court's grant of summary judgment on all five of his claims[1] against The Landings Association, Inc. (hereafter "TLA").[2] Finding no error, we affirm.

---

[1] Breach of contract, promissory estoppel, negligence, breach of fiduciary duty, and attorney fees. No argument is made here regarding attorney fees and we do not consider that issue further. Court of Appeals Rule 25 (c) (2).

[2] Appellee TLA's motion to strike appellant's reply brief and reply to cross-appeal is hereby granted because appellant's brief is in violation of Court of Appeals Rule 24 (f).

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A defendant moving for summary judgment may put forth evidence to show that there is no issue of fact as to one or more elements of the plaintiff's causes of action or demonstrate that the record lacks sufficient evidence to support one or more of the plaintiff's causes of action. We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant.[3]

So viewed, the evidence was that Campbell and his wife moved to the Landings on Skidaway Island near Savannah in 1995.[4] Their lot abutted the marsh and, in 2005, Campbell became interested in purchasing an airboat for his personal use. At that time, Dean Ayers was the office manager of the two marinas at the Landings. Sometime in the spring of that year, Ayers recalled Campbell coming into the marina office, saying that he was getting an airboat and that he wanted to keep it at the Landings. Campbell showed Ayers a letter from the Georgia Department of Natural Resources which Campbell claimed gave him permission to use the airboat in the marshes. Ayers read the letter and told Campbell that, in his opinion, that was not what the letter said.

Ayers advised Campbell that, in order to have a place at the Landings to store his boat, Campbell would have to fill out an application, consisting of three pages to be filled out and returned, with a set of rules and regulations regarding boat storage attached for him to keep. Campbell asked Ayers if he could guarantee that, when his boat, which was then being built, was delivered in the fall, there would be a space available for its storage. Ayers responded that the only way he could guarantee the space was if Campbell began to pay for it. Asked during his deposition if he had ever paid any money for a space at either marina, Campbell responded: "[n]o, I didn't, because I never got any space. I wanted space. I asked for space. I didn't get any space and I didn't pay any money, because they had breached the contract." Campbell said the breach occurred on or about August 11, 2006, when his airboat was delivered. He acknowledged that he did not pay for storage prior to the delivery.

---

Appellee's motion for leave to file supplemental brief is rendered moot by the previous ruling. Appellant's out-of-time motion to exceed page limit is hereby denied.

[3] (Citations and punctuation omitted.) *Koncul Enterprises v. Fleet Finance*, 279 Ga. App. 39 (630 SE2d 567) (2006).

[4] TLA is the property owners association for the Landings and is run by a general manager under the direction of its Board of Directors.

478

On May 9, 2005, Campbell sent a fax to Stan Floyd, president of American Airboat Corporation, stating that "we believe that you are the right airboat builder for us and we intend to place an order with you shortly but if it is OK with you we need to now ask a few more questions." Attached were four pages titled "Airboat Custom Specification Requirements and IMPORTANT QUESTIONS," including "[n]eed complete Airboat and Engine Cover for year round OUTDOOR BOAT STORAGE at our home." On May 26, 2005, Campbell traveled to Orange, Texas, and met with Floyd about his boat.

On June 24, 2005, Campbell sent an e-mail to American Airboat Corporation acknowledging receipt of a general boat order form and requesting "a specification sheet *before I can sign off on an order*." (Emphasis supplied.)

On July 5, 2005, Campbell wrote a check for $32,000 to American Airboat Corporation. During his deposition on November 2, 2007, two copies of this check were tendered by TLA. Both were identical except for the notation on the memo line. On Exhibit 15, that line read "advance down payment on Purchase Contract." Something had been scratched out between "on" and "Purchase Contract." Asked "[d]o you know who might have scratched through it," Campbell responded "I — I don't know. I don't know. I don't remember." Later, Exhibit 34 was introduced. The memo line read "advance down payment on For 7/4/05 Purchase Contract." Asked if that were an accurate reading of the memo line, Campbell answered "That's — that's what the check says, but that could be mis — misleading in terms of how that's interpreted."

On July 21, 2005, Campbell returned to Walter Jennings of TLA the previously provided 2005 Dockage and Storage Agreement, signed by Campbell. Campbell handwrote on it, in pertinent part, the following: "this a new boat (airboat) being built for delivery between Sept. 15 and October 1st 2005. Walter has guaranteed Rack Space for boat and parking space for Trailer."

On July 27, 2005, a seven page document containing specifications for a "20x8 Air Ranger 2005 Model" and reflecting a total price of $68,624.94 was signed by Feron Floyd for American Airboat Corporation and by Campbell.

By a fax of June 26, 2006, to American Airboat, Campbell began making arrangements for delivery of the airboat to the marsh adjacent to his home. As he stated, "I have decided because of the risk of the 'lifts' involved in dry storage at the Marina that I would be better off keeping the boat on the shore in front of our house." On July 5, 2006, Campbell made the final payment of $36,043 to American Airboat Corporation. The airboat was delivered on August 11, 2006, and, pursuant to Campbell's instructions, it was moored in the marsh tidal basin adjacent to his property. Campbell took the

airboat out on three occasions. In voice messages left for Ken Durden, an employee of TLA in charge of covenant enforcement, on August 15 and August 21, 2006, Campbell reiterated his feeling that storage at the marina was not a good idea because of concerns with the lift and safety straps.

Shari Haldeman, the general manager of TLA, became aware of the airboat after its delivery when she began to receive complaints from residents about its placement in the marsh and the noise created by it. Ken Durden visited Campbell in August 2006 and told him he was not sure whether the covenants addressed the boat's presence in the marsh, but he was sure that they did proscribe the parking of his boat trailer in his driveway.

Thereafter, Durden contacted the Department of Natural Resources (hereafter "DNR"), Coastal Resources Division, and the Chatham County/Savannah Police Department to report the airboat in the marsh and the noise complaints. In August 2006, Buck Bennett was compliance and enforcement manager for DNR and was responsible for enforcement of the Coastal Marshlands Protection Act.[5] On August 18, 2006, he received a report from Corporal Bill Bryson that there was a vessel anchored in the marsh. Although no action was taken by the police, Bennett and Bryson of DNR did visit Campbell on August 23, 2006, and found that the airboat had caused some damage to the marsh. During that visit, Bennett delivered to Campbell a letter dated August 18, 2006, from Susan Shipman, Director of the Coastal Resources Division of DNR, directing Campbell "to cease operation of your watercraft through and over the jurisdictional marshes of the state of Georgia in such a manner as to cause any further impact to vegetated marshlands."

Also, as a result of residents' complaints about the airboat, general manager Haldeman formulated a policy for TLA that airboats and high performance boats would not be accepted by the TLA marinas, effective August 23, 2006. On August 25, 2006, Campbell and his wife met with Haldeman and other TLA employees, and Campbell submitted his request that he be granted a waiver of the no airboat policy and be allowed to store his boat at one of the marinas. This request was denied.

On October 24, 2006, Campbell filed his complaint in this matter, seeking as damages the full purchase price of the airboat as well as other associated costs.

1. Campbell's first enumeration is that "the existence of an enforceable storage contract is a question of fact."

Pretermitting the fact that Campbell's brief on this issue con-

---

[5] OCGA § 12-5-280 et seq.

sists of one page and one line and contains only factual statements with no argument or citation of authority, in violation of Court of Appeals Rule 25 (a) (3),[6] we address the issue of the existence of a contract vel non because it underpins all of his remaining claims.

In his complaint, Campbell alleged in his preliminary paragraphs that "[o]n or about July 21, 2005, [he] executed and sent in the documentation customarily used to secure a storage space." Count 1 incorporated all the preliminary statements and further alleged that "Plaintiff and the Defendant entered into a contract whereby the Defendant would agree to provide dry storage and trailer space for the Plaintiff's airboat and trailer. Defendant breached this agreement." In his brief here, Campbell states that he and Walter Jennings,[7] on behalf of the marina, "entered into an oral boat storage agreement." Mr. Campbell "then went back to Mr. Jennings for written verification of the agreement already in place."

Whether the contention is that the contract was oral or written, Campbell has failed to show the elements of an enforceable contract. Under OCGA § 13-3-1, a valid contract includes "three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms."[8]

As far as this Court can discern from the pleadings and briefs submitted below, Campbell contends that, but for the promise by Jennings on behalf of TLA for storage of his airboat and trailer, he would not have purchased the airboat. That contention, however, is belied by the undisputed facts, as set out above. It is clear that, as of July 5, 2005, the date of the check written to American Airboat, if not sooner, Campbell had entered into a contract with American Airboat to purchase his boat. This was prior to his returning the signed 2005 Dockage and Storage Agreement to Jennings. Therefore, this written document could not have been a condition precedent to his agreement to purchase the boat.

Further, the Dockage and Storage Agreement states that it continues "on a month-to-month basis, being annually renewed until its termination by either party" and that the "[i]nitial rent for the first month or partial month *shall be paid* upon the signing of this Agreement. Rent thereafter shall be due on the first day of each subsequent month *until written notice from the owner.*" (Emphasis supplied.) It is not disputed that, even assuming the July 21, 2005 document to be a contract, Campbell did not renew it before delivery

---

[6] Pursuant to Rule 25 (c) (2), we may consider such an enumeration of error abandoned.

[7] Jennings' deposition was not taken by Campbell nor is there any affidavit from him in the record.

[8] *Lifestyle Family v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 309 (1), n. 3 (568 SE2d 171) (2002).

of his boat in August 2006, nor did he ever pay rent.

Any oral contract depends upon statements of Jennings, who was not deposed and did not offer any affidavit, and these statements are therefore hearsay proving nothing for the purposes of summary judgment.[9] Additionally, there is no evidence presented by Campbell as to the date of the alleged oral statement made by Jennings regarding storage of the boat and trailer.

Therefore, there was no error in the trial court's grant of summary judgment to TLA on the breach of contract claim.

2. Campbell's second enumeration is that his promissory estoppel claim is a jury issue.

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[10]

In his promissory estoppel count, Campbell claims as damages the purchase price and other damages arising from the purchase of the boat. In his brief here, Campbell states that "Appellee's agent promised the Plaintiff that Appellee would store his airboat." Again, however, Campbell's claim rests on statements allegedly made to him by Jennings, which are hearsay. Therefore, he has failed to come forward with any evidence creating an issue of fact on his claim for promissory estoppel, and the trial court did not err in granting summary judgment to TLA.

3. Campbell also contends that questions of fact remain on his negligence claim.

Count 3 of his complaint alleges that TLA

owed a duty to [him] to ensure that it was able to provide the services to [him] as promised and ensure the accuracy of statements and representations made to [him] with regard to this contract. The Defendant was negligent and/or reckless in failing to investigate availability and regulations and in making representations confirming its agreement of storage.

Again, this count relies primarily upon the hearsay statements of Jennings, which cannot supply the basis for denying TLA's motion for summary judgment below.

To the extent that the argument here seeks to expand the claim

---

[9] *Dasher v. Davis*, 274 Ga. App. 788, 789 (618 SE2d 728) (2005); *Adams v. Gay*, 270 Ga. App. 65, 66 (1) (606 SE2d 26) (2004); *Blue Cross &c., Inc. v. Kell*, 227 Ga. App. 266, 270-271 (3) (488 SE2d 735) (1997).

[10] OCGA § 13-3-44 (a).

alleged below to include the negligent passage of the rule banning airboats by Haldeman, that is improper and we will not consider it. "As appellate courts, we are courts for the correction of errors of law made by the trial courts. . . . An error of law has as its basis a specific ruling made by the trial court."[11] Without a ruling by the trial court on this specific claim of negligence, there is nothing for us to review.

4. Campbell's fourth enumeration is that "the anti airboat rule created unilaterally by Ms. Halderman [sic] is invalid."

In Count 4 of his complaint, Campbell alleged that "TLA owed a fiduciary duty to [him] as a resident and landowner at the Landings. Defendant breached the fiduciary duty and is liable to [him] for all damages arising from said breach" including the cost of his boat.

OCGA § 23-2-58 provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

As argued by TLA below in its motion for summary judgment, the burden is on the party asserting the existence of a fiduciary or confidential relationship to establish its existence.[12] Campbell's mere reliance upon his status as a resident of the Landings, without more, fails to establish such a relationship.

There was no error in the trial court's grant of summary judgment to TLA on this claim.[13]

5. Under the circumstances and given the clear state of the law, Campbell's attorney could not reasonably have believed that this appeal would result in a reversal of the trial court's decision. Therefore, we grant TLA's motion to assess damages for a frivolous appeal, and we impose a $1,000 frivolous appeal penalty on Campbell and his attorney pursuant to Court of Appeals Rule 15 (b).

### Cross-Appeal

6. In its cross-appeal, TLA argues that the trial court abused its

---

[11] (Citation omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

[12] *Savu v. SunTrust Bank*, 293 Ga. App. 683, 690 (3) (668 SE2d 276) (2008). Accord *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 531 (1) (583 SE2d 203) (2003).

[13] *Savu v. SunTrust Bank*, supra at 691 (3); cf. *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 593 (4) (631 SE2d 792) (2006).

discretion in denying its motion for attorney fees based on OCGA § 9-15-14 (b).

"A prevailing party is not perforce entitled to an award of attorney fees under this statutory subsection" and a trial court need not make findings of fact in denying an award.[14] An award under OCGA § 9-15-14 (b) "is entirely within the discretion of the trial court after considering all the facts and law."[15]

It is apparent from the record before this court that the proceedings below were hard fought and the feelings of the parties were intense. While another judge may have made a different ruling on the issue of attorney fees, we cannot say that the trial judge abused her discretion in denying TLA's motion for attorney fees.[16]

*Judgment affirmed with direction. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 24, 2011.

*Duffy & Feemster, Matthew M. Bush*, for appellant.
*Ogletree, Deakins, Nash, Smoak & Stewart, William P. Steinhaus, Thornell Williams, Jr.*, for appellee.

---

[14] (Citation and punctuation omitted.) *Bellah v. Peterson*, 259 Ga. App. 182 (1), 183 (2) (576 SE2d 585) (2003) (considering denial of award under OCGA § 9-15-14 (a)).

[15] (Citation and punctuation omitted.) *MARTA v. Doe*, 292 Ga. App. 532, 540 (5) (664 SE2d 893) (2008); *Doe v. HGI Realty*, 254 Ga. App. 181, 184 (561 SE2d 450) (2002).

[16] Cf. *Stewart v. Tricord, LLC*, 296 Ga. App. 834, 836 (1) (676 SE2d 229) (2009).