**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 6, 2015**

# In the Court of Appeals of Georgia

A15A0715. ON LINE, INC. v. WRIGHTSBORO WALK, LLC.      DO-035

DOYLE, Chief Judge.

This appeal arises from a contract dispute over the purchase of commercial real estate. After On Line, Inc. ("On Line"), failed to complete the purchase of the property, Wrightsboro Walk, LLC ("Wrightsboro"), filed the instant action against On Line, alleging that On Line breached the parties' contract and acted in bad faith by failing to deposit into escrow the proper amount of earnest money and asking for attorney fees and costs. Wrightsboro moved for summary judgment, which the trial court granted. On Line appeals, arguing that the trial court erred by (1) finding that the inspection period began on August 23, 2013, rendering On Line's termination untimely; (2) failing to find missing conditions precedent to the obligation; and (3) failing to find a question of fact existed as to whether Wrightsboro was estopped from

asserting that termination was untimely. Because there is a genuine issue of material fact as to whether On Line was able to obtain financing as a contractual condition precedent to payment of the earnest money and completion of the sale, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A defendant moving for summary judgment may put forth evidence to show that there is no issue of fact as to one or more elements of the plaintiff's causes of action or demonstrate that the record lacks sufficient evidence to support one or more of the plaintiff's causes of action. We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant.[1]

On Line entered into a purchase and sale agreement ("the Agreement") for commercial real estate from Wrightsboro for $3,600,000. The contract provided that upon execution of the Agreement, On Line would deposit into escrow $25,000 in earnest money, which On Line did. Within three days of the expiration of the due diligence period,[2] On Line was required to deposit an additional $25,000 into escrow. This deposit never occurred, however, because On Line terminated the Agreement.

---

[1] (Punctuation omitted.) *Campbell v. Landings Assn.*, 311 Ga. App. 476, 477 (716 SE2d 543) (2011), quoting *Koncul Enterprises v. Fleet Finance*, 279 Ga. App. 39 (630 SE2d 567) (2006).

[2] The due diligence period is elsewhere referred to as the Inspection Period.

Had the sale been completed, the earnest money would have been applied to the purchase price, but in the event that On Line failed to close

> the transaction for reasons other than a [Wrightsboro] default or the inability to have the Loan with Morgan Stanley Mortgage Capital Holdings, LLC,[3] . . . transferred to [On Line, which occurrences would result in the return of the Earnest Money to On Line,] then the Earnest Money shall be paid to and retained by [Wrightsboro] as [Wrightsboro's] sole remedy . . . .

On Line was required to diligently seek from Morgan Stanley a transfer of the Loan, but the Agreement was contingent on this method of financing and would otherwise terminate.

The Agreement provided in paragraph 8.1 that On Line had the right to a 30-day Inspection Period that would begin on "the Effective Date," which was the date upon which On Line

> ha[d] received from [Wrightsboro] copies of [Wrightsboro's] title policy for the Property including all exhibits and schedules (and including the legal description of the Land), (ii) any surveys of the Land in [Wrightsboro's] possession; (iii) any environmental reports of the Property in [Wrightsboro's] possession; (iv) income and expense reports

---

[3] The parties intended for On Line to assume the $2,000,000 loan between Wrightsboro and Morgan Stanley as part of the purchase price of the property.

for the calendar years 2010, 2011, and 2012, and monthly reports for calendar year 2013; and (v) copy of the Billboard easement . . . .

On Line had the right to terminate the sales contract at any time during the 30-day period "by delivering written notice to [Wrightsboro] on or before the last day of the Inspection Period, in which event this Agreement shall terminate and all Earnest Money shall be immediately refunded to" On Line. The contract also provided that

> [e]ach notice or document (collectively referred to in this Section as "notice") required or permitted to be given hereunder must comply with the requirements of this Section. Each such notice shall be in writing and shall be delivered either by personal delivery, by delivery utilizing Federal Express, UPS or other national or local courier service, or by depositing it with the United States Postal Service or any official successor thereto, certified mail, return receipt requested, with adequate postage prepaid, addressed to the appropriate party . . . Such notice shall be deemed delivered at, the date of personal delivery, the date of receipt for delivery with a courier, or, if mailed, when it is received or refused, but the time period in which a response to any such notice must be given or any action taken with respect thereto shall commence to run from the date it is actually received by the addressee thereof, as evidenced by telecopy transmission confirmation, receipt for personal or courier delivery, or certified mail return receipt.

In adddition, in paragraph 9.17, Wrightsboro "warrant[ed] that it ha[d] no knowledge of any material inaccuracy in any report, data, lease, books, records, accounting or other documentation whatsoever. . . ." Finally, the contract provided that any modification of the agreement was not effective unless made in writing and executed by the parties.

It is undisputed that Wrightsboro uploaded numerous document files to the internet-based storage website known as Dropbox and sent an email with a hyperlink to access these documents to On Line's representative, Frank Salvati, on August 23, 2013. On August 26, 2013, a representative for Wrightsboro sent an email to a commercial real estate agent working with On Line, David A. Reece, which contained a "Receipt of Documents" that Wrightsboro failed to send to Salvati on August 23; the Receipt consisted of a single document listing 21 other documents and a separate boxed notation stating that the 21 documents were sent on August 23, 2013, and "[t]herefore, per Paragraph 8.1 of the [Agreement], the Inspection Period shall end [September 23, 2013]." The Wrightsboro representative asked Reece to "please have your Buyer initial and sign and send back to us at your earliest convenience." Salvati initialed this box separately from signing the Receipt, dating the Receipt August 27, 2013. Reece returned the Receipt to Wrightsboro representatives via email, stating

5

therein "[h]ere is the signed and initialed Receipt of Documents. It is duly noted that Inspection period started [August 23, 2013] and ends [September 23, 2013]. I will notify buyer and legal counsel of this date."[4]

Thereafter, the parties exchanged numerous emails, On Line had inspectors investigate the property, and On Line requested of Wrightsboro additional documents regarding the physical state of the property as well as the earnings and losses. Additionally, although Wrightsboro had claimed that the property was built in 2006, Reece averred that after On Line's inspectors noticed that many of the HVAC systems were from 1989, Wrightsboro sent amended documentation listing a 1989 build date and 2006 renovation date. By September 23, 2013, Wrightsboro had provided numerous documents as requested by On Line, but some accounting statements were still under review; however, on September 24, 2013, On Line forwarded to Wrightsboro a letter of termination of the Agreement. Wrightsboro brought suit thereafter.

After a hearing, a transcript for which does not appear in the record, the trial court determined that there were no issues of material fact as to when the Inspection

---

[4] Thirty days from August 23, 2013, actually would have been September 22, 2013. The contract does not specify a particular method of calculation.

Period began or whether all the necessary documents had been received by On Line in order to allow On Line's termination during the Inspection Period. The trial court's order, however, does not address the issues raised concerning lack of financing or repair issues.

"Because our review is at the summary judgment stage and the interpretation of a contract, including the existence or nonexistence of any ambiguities in the contract, usually involves a question of law for the court to resolve, our review is de novo."[5]

1. On Line argues that the trial court erred by failing to find material issues of fact existed as to whether Wrightsboro made material misrepresentations to On Line and whether On Line was unable to assume the loan, which issues would have allowed termination of the agreement without penalty to On Line. We agree and reverse the grant of summary judgment.

In his affidavit, Salvati contended that Wrightsboro had "unexplained discrepancies and inconsistencies in the income and expense reports . . . [, and a]s a result, On Line could not provide necessary documentation to Morgan Stanley

---

[5] (Citations and punctuation omitted.) *Sheperd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 189 (750 SE2d 463) (2013).

Mortgage Capital Holdings, LLC, sufficient to allow the loan assumption contemplated by the Agreement." Moreover, the issue of financing was not governed by the Inspection Period time limit for termination, which governed other reasons for termination, and therefore, any failure on the part of On Line to terminate on this basis prior to September 23, 2013, was inconsequential. Although the record contains a dearth of other evidence to support On Line's argument that it was unable to assume the loan as contemplated under the agreement, Salvati's sworn statement avers that he had personal knowledge of this matter. Such statements are sufficient to create a fact question, and therefore, the trial court erred by granting summary judgment to Wrightsboro.[6]

On Line also contends that Wrightsboro made material misrepresentations — the fact that the property was built in 2006 rather than 1989, the lack of complete financial documentation or inaccuracies therein, and various repair issues — allowing On Line to terminate the Agreement outside the Inspection Period. Again, we agree with On Line that issues of fact exist as to whether Wrightsboro violated paragraph 9.17 of the Agreement thereby allowing for termination outside the Inspection Period.

---

[6] See, e.g., *Timeless Architectural Homes, Inc. v. Jones*, 270 Ga. App. 406, 408 (3) (606 SE2d 635) (2004). See also OCGA § 9-11-56 (c) & (e).

8

Accordingly, we reverse the trial court's grant of summary judgment to Wrightsboro on these issues.

2. On Line also argues that the trial court erred by finding that the Inspection Period began on August 23, 2013, because Wrightsboro did not tender all the required documents at that time or deliver them in a method required by the contract. We disagree.

The contract language regarding the Inspection Period and the Notice provision is clear that the time period should not begin until Wrightsboro effected delivery of all the documents necessary under paragraph 8.1 via the accepted methods of delivery. Nevertheless, Wrightsboro provided a written receipt proposing that the Inspection Period be considered August 23 to September 23, 2013. On Line's representative, Salvati, signed the Receipt and initialed a box on the receipt noting that the Inspection Period began on August 23, 2013, thus completing a modification of the contract.[7] Salvati was under no obligation to sign it, initial the box, or agree with the statement. Salvati could have changed the date to reflect that he could not open the Dropbox materials until August 27 or that Wrightsboro failed to tender all

---

[7] See *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995) ("parties to a contract can, by subsequent mutual agreement, modify a written contract").

9

required documents. Instead Salvati acknowledged the statement, thus completing a written modification of the contract to the extent that paragraph 8.1 otherwise would have required more precise compliance with the Notice and Inspection Period provisions of the Agreement.

Accordingly, the trial court did not err by finding that the termination did not occur during the Inspection Period.

3. On Line also argues that Wrightsboro is estopped from arguing that the notification of termination was untimely because it failed to provide all the necessary documents by August 23, 2013. Because this Court concluded in Division 2 that the signed Receipt constituted a modification of the Inspection Period clause, and because On Line at no time attempted to further modify the clause based on the alleged failure of Wrightsboro to fully comply with the terms of paragraph 8.1, Wrightsboro was not estopped from arguing that On Line had made an untimely attempt to terminate the contract during the Inspection Period.

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*