**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 9, 2017**

# In the Court of Appeals of Georgia

A17A0519. LEE et al. v. PARK.

REESE, Judge.

Keum Soon Lee and her attorney, Kennon Peebles, Jr. (collectively, "Lee"), appeal from the trial court's order directing them to pay $9,570 in attorney fees to Ai Sook Park.[1] Lee contends that the court abused its discretion in finding that her claims lacked substantial justification and, based upon that finding, awarding Park attorney fees under OCGA § 9-15-14 (b). For the reasons that follow, infra, we agree and reverse.

The record shows that, in June 2012, Lee and Sok Sun Yun bought an existing Atlanta business known as "Spring Spa." Although Lee and Yun had no formal agreement, they operated the business as an equal partnership, sharing management

---

[1] This Court granted Lee's application for discretionary review.

responsibilities. In February 2013, they executed a four-year lease for the premises that listed the tenant as "Spring Spa, L.L.C." The lease was signed by the "tenants," Yun and Anthony Parumal, who was Lee's boyfriend; Parumal also initialed each page of the lease. On May 30, 2013, however, Yun sold 100 percent of the ownership of the business to Park for $55,000, without Lee's knowledge or consent. Park immediately took possession of the premises.

A few days later, Lee learned about the sale and contacted Park to inform her of her (Lee's) ownership interest in the spa. According to Parumal, Park told them that, on the day she purchased the spa, she had heard that Yun had a partner in the business, but when she asked Yun about it, Yun responded, "Oh, I will take care of it."

In August 2014, Lee filed suit against Yun and Park. Against Yun, she asserted claims for breach of contract, fraud, and conversion. She also sought a declaratory judgment that Park's purchase of the business was void and a permanent injunction barring Park from the premises. In addition, she asserted a claim for unjust enrichment against Park, seeking reimbursement for rent and insurance payments for the business that she had made after the sale, while she was still asserting her ownership interest in the spa.

During a bench trial, Yun testified that the first time she met or spoke with Park about selling the business was on the day the sale contracts were executed and the sale was closed, May 30, 2013. According to Yun, Lee never had an ownership interest in the spa, so Yun did not tell Park that Lee was a part-owner of the business. Yun also testified that she called the business' landlord on the day of the sale to tell him that Park was purchasing the spa and would be assuming the lease for the premises. The landlord was out of town, however, and he told Yun that he would address the issue when he returned to Atlanta.[2]

Park testified that she had wanted to purchase a spa in Atlanta and that a friend told her about Yun's business. According to Park, Yun reduced the initial asking price for the spa because Yun wanted to have a "quick sale." Park admitted that she first met Yun, signed the sales contract, and closed on the purchase of the spa in a single day, May 30, 2013. When questioned about the lease, which contained the signatures of two tenants – Yun and Parumal – Park first testified that she did not see Parumal's signature, adding that if she had seen his signature, then she would not

[2] The record shows that the landlord never approved a change to the lease to name Park as the tenant, nor did Park execute a new lease. According to the landlord, he had forgotten about the issue by the time he returned to Atlanta, and no one contacted him about changing the lease, so he believed that the situation had returned to the status quo.

have purchased the business. After her counsel showed her the lease, however, she admitted that she had seen the signature, but assumed that Parumal was a landlord and ignored his signature. She explained that the first page of the lease identified the tenant as "Spring Spa" and that, because she was buying the business from a Korean person (Yun), she only paid attention to the Korean names on the contract. Park also admitted that she did not investigate to see if the business had any outstanding expenses or taxes due prior to buying the spa. And, although she was purchasing an established business, Park presented no evidence that she asked to see Yun's purchase agreement to ensure that Yun was the spa's sole owner, that she inquired about the business' income and expense history, or that she asked to review the business' past checking account statements or accounting records.

Regarding Lee's unjust enrichment claim seeking reimbursement for rent and insurance payments she had made after Park purchased the business, Park asserted for the first time at trial[3] that she had paid business expenses that had been incurred prior to her purchase of the spa. According to Park, these expenses included $5,880 in

[3] The record shows that Park did not assert a set-off defense in her answer, did not file a counterclaim for her payment of the expenses, and did not raise the issue of set-off or claim any damages in the pre-trial order. In fact, during the hearing, the court specifically asked Park's counsel whether he was asserting a counterclaim against Lee, and he replied that he was not.

property taxes, "about maybe $2,000" for the water bill, $520 for telephone service, $600 for gas and electricity, $500 for landscaping, and "a little over $2,000" in payroll taxes.[4]

The trial court subsequently entered judgment in favor of Lee on her claims against Yun based upon its conclusion that Lee had a 50 percent ownership interest in the spa, and it awarded her both damages and attorney fees. With respect to Lee's claims against Park, however, the court ruled that Park was a bona fide purchaser for value who "did not have any reason to suspect that [Lee] or anyone else claimed an interest in the Spring Spa at the time she purchased the business." The court further ruled that Park's purchase of the spa was valid and binding. Finally, on Lee's unjust enrichment claims, the court ruled that the rent and insurance payments that Lee made after the sale were voluntarily paid after she had notice of her potential claims and that Lee's payments were "properly set off against payments made by Defendant Park for debts owed by the business prior to Park purchasing it."

---

[4] Although the record shows that the total of these payments equals $11,600, the total is actually $11,500. Notably, only the amount of the property tax payment was supported by any documentary evidence. Park's testimony as to the amounts she paid on the remaining bills appears to be her approximations.

Following entry of the judgment, Park filed a motion for attorney fees under OCGA § 9-15-14. The court granted the motion, ruling that Park was entitled to fees under OCGA § 9-15-14 (b) because Lee's claims against her "lacked substantial justification in that they were 'substantially frivolous, substantially groundless, and substantially vexatious.'" The court found that "[n]o credible evidence was presented that would indicate Defendant Park was placed on notice of Lee's claim of ownership or that Park failed to exercise due diligence regarding ownership of the business prior to purchasing Spring Spa." In addition, the court reiterated its previous finding that Lee's post-sale payments on behalf of the business were properly set-off by Park's payment of the business' pre-sale debts. Accordingly, the court awarded Park attorney fees in the amount of $9,570, jointly and severally against Lee and her trial counsel. This appeal followed.

OCGA § 9-15-14 (b) gives a trial court the discretion to award attorney fees in several circumstances, including where "an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification[.]" "[L]acked substantial justification means substantially frivolous, substantially groundless, or substantially vexatious."[5] We review a trial court's award of attorney fees under

---

[5] OCGA § 9-15-14 (b).

6

OCGA § 9-15-14 (b) for an abuse of discretion.[6] With these guiding principles in mind, we turn now to Lee's specific claims of error.

1. Lee argues that the trial court abused its discretion in awarding Park attorney fees based upon a finding that her equitable claims against Park lacked substantial justification. With respect to the claims for a declaratory judgment and injunctive relief, Lee maintains that she presented evidence that created a legitimate factual dispute as to whether Park was a bona fide purchaser for value. We agree.

A bona fide purchaser for value is protected against outstanding interests in a purchased property of which he or she had no notice.[7] "To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue."[8] "Notice sufficient to excite attention and put a party

---

[6] *DeKalb County v. Adams*, 263 Ga. App. 201, 203 (587 SE2d 302) (2003).

[7] See OCGA §§ 23-1-19 ("If one with notice sells to one without notice, the latter shall be protected."); 23-1-20 ("A bona fide purchaser for value without notice of an equity will not be interfered with by equity."); 23-2-34 ("Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice."); see also *Montgomery v. Barrow*, 286 Ga. 896, 897 (1) (692 SE2d 351) (2010).

[8] *Virginia Highland Civic Assn. v. Paces Properties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001) (footnote omitted). Accord *Rolan v. Glass*, 305 Ga. App. 217, 218 (1) (699 SE2d 428) (2010).

on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."[9] Whether the circumstances were sufficient to put a party on notice of an alleged fraudulent transfer and the opposing party's interest in the property at issue is a question of fact to be determined by the trier of fact.[10] And an award of attorney fees under OCGA § 9-15-14 (b) is not warranted where the claim at issue is dependent upon the resolution of a factual or legal dispute.[11]

---

[9] *Whiten v. Murray*, 267 Ga. App. 417, 421 (2) (599 SE2d 346) (2004) (citation and punctuation omitted). See *Montgomery*, 286 Ga. at 897 (1) (holding that "any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed.") (citation and punctuation omitted).

[10] *R. W. Holdco, Inc. v. SCI/RW Holdco, Inc.*, 250 Ga. App. 414, 415 (1) (551 SE2d 825) (2001).

[11] See *Brown v. Gadson*, 298 Ga. App. 660, 661-662 (680 SE2d 682) (2009); *DeKalb County*, 263 Ga. App. at 203-204; see also *Exec. Excellence v. Martin Bros. Investments*, 309 Ga. App. 279, 286-288 (2) (710 SE2d 169) (2011) (award of attorney fees under OCGA § 9-15-14 was not authorized because the plaintiffs made an evidentiary showing which, if accepted by the factfinder, would have authorized a judgment in their favor); see generally *Marino v. Clary Lakes Homeowners Assn.*, 331 Ga. App. 204, 211 (3) (770 SE2d 289) (2015) (when genuine issues of fact remain that preclude summary judgment, an award of attorney fees under OCGA § 9-15-14 (b) is not warranted except in unusual cases).

To support her argument that there was a legitimate factual dispute as to whether Park was a bona fide purchaser for value, Lee points to the evidence she presented at trial (shown above) and to Park's interrogatory responses, which support a finding that Park failed to conduct any investigation to confirm the ownership of the business or perform other due diligence before purchasing the business. For example, in her interrogatory responses, Park conceded that she did not meet Yun until the day she purchased the business, she never had contact with the landlord before attempting to assume the lease the same day, and she never consulted an attorney or real estate agent prior to or during the closing.[12]

Further, the evidence at trial showed that Park had the opportunity to read the lease agreement that she was going to be assuming. It is undisputed that the lease was initialed and signed by Parumal, and Park specifically testified that she saw his signature but disregarded it, instead of simply asking who Parumal was and why he had signed the lease. Parumal's signature on the lease supports a finding that Park had at least constructive notice that someone else had an interest in the business, and her

---

[12] In fact, Park admitted that the handwritten sales contract executed by the parties was based upon a generic sales contract obtained by her boyfriend from the Internet, which he then transcribed into the Korean language.

failure to inquire about it is sufficient to create an issue of fact as to whether Park exercised due diligence prior to the purchase.[13]

In an effort to show that she exercised due diligence prior to the purchase, Park contended that Yun and two others present at the closing indicated to her that Yun was the sole owner of the business. Parumal testified, however, that Park told him shortly after the sale that, on the day of the closing, she learned that Yun had a partner in the business, but when she asked Yun about it, Yun told Park that she would take care of it. This conflicting evidence presented an issue of fact regarding Park's constructive notice that had to be resolved at trial.

Park also apparently relies on the fact that Yun's name was the only one on the business checking account for her conclusion that Yun was the sole owner of the business. A factfinder could have concluded that such reliance demonstrated a lack of due diligence, however, given the absence of any evidence that Park reviewed past bank statements, income and expense reports, or other accounting records of the ongoing business enterprise that she was purchasing and was intending to continue operating under the same name.

---

[13] See footnotes 9 and 10, supra, regarding constructive notice and due diligence.

Finally, although Park testified that she checked the Georgia Secretary of State's records for the corporation, she later admitted that she did so *after* she had purchased the business. Moreover, there is no evidence that she contacted the registered agent for the corporation, who is identified as "Kenny S. K. Lee," to confirm the ownership of the business.

Thus, the evidence presented several genuinely disputed factual issues that had to be resolved before the court could determine whether Park was a bona fide purchaser for value. The fact that the trial court ultimately ruled in favor of Park on that disputed issue does not mandate a finding that Lee's equitable claims were substantially frivolous, groundless, or vexatious.[14]

As previously stated, a court is not authorized to award attorney fees under OCGA § 9-15-14 (b) where a ruling on the claim at issue is dependent upon the

---

[14] See *Campbell v. The Landings Assn.*, 311 Ga. App. 476, 483 (6) (716 SE2d 543) (2011) ("A prevailing party is not perforce entitled to an award of attorney fees" under OCGA § 9-15-14 (b).) (punctuation and footnote omitted); see also *Rescigno v. Vesali*, 306 Ga. App. 610, 616 (4) (703 SE2d 65) (2010) (finding that the trial court did not abuse its discretion in denying the defendant an award of attorney fees under OCGA § 9-15-14 (b), because there was some evidence to support the plaintiff's case, even though the jury ultimately found in favor of the defendant); see generally *Brown v. Kinser*, 218 Ga. App. 385, 387 (1) (461 SE2d 564) (1995) (Even when a trial court grants summary judgment to a party prior to trial, the prevailing party is not automatically entitled to attorney fees under OCGA § 9-15-14.).

resolution of a factual or legal dispute. Thus, we conclude that the trial court abused its discretion in concluding that Lee's equitable claims were without substantial justification, and the award of attorney fees under OCGA § 9-15-14 (b) for defending against these claims must be reversed.

2. Lee also challenges the portion of attorney fees that were awarded to Park for defending against Lee's unjust enrichment claim. The record shows that not only was there a legitimate factual dispute about the funds Lee paid, but the trial court set off the amount due to Lee with expenditures claimed by Park for expenses that were incurred prior to her purchase of the business. Because Park did not actually prevail on Lee's unjust enrichment claim, the court abused its discretion in awarding Park attorney fees under OCGA § 9-15-14 (b) for defending against this claim.[15]

*Judgment reversed. Doyle, C. J., and Miller, P. J., concur.*

---

[15] See *Sierra-Corral Homes v. Pourreza*, 308 Ga. App. 543, 548 (7) (708 SE2d 17) (2011) (OCGA § 9-15-14 (b) "only permits attorney fees to be awarded for claims that are successful." Because the defendant did not prevail on any claim, it was not entitled to attorney fees.) (footnote omitted).