**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1497, A19A1649. TROUP COUNTY, GEORGIA v. MAKO DEVELOPMENT, LLC; and vice versa.

MILLER, Presiding Judge.

This case involves a dispute between Troup County, Georgia ("the County") and Mako Development, LLC ("Mako") over the valuation of certain easements that the County imposed on Mako's property as part of an expansion project at a nearby airport. In Case Number A19A1497, the County challenges the jury's verdict, arguing that the trial court erroneously instructed the jury on consequential damages and that the trial court improperly allowed evidence of a "runway protection zone." In Case Number A19A1649, Mako challenges the trial court's denial of its motion for attorney fees. We find no reason to disturb the jury's verdict, and we conclude that

the trial court did not abuse its discretion by denying Mako's request for attorney fees. Accordingly, we affirm.

"On appeal from a trial court's entry of judgment on a jury's verdict in a condemnation action, this Court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict." (Citation and punctuation omitted.) *Dept. of Transp. v. Jordan*, 300 Ga. App. 104 (684 SE2d 141) (2009).

In 2006, Mako purchased a 6.2-acre parcel of property near the LaGrange-Callaway airport in the city of LaGrange, Georgia for approximately one million dollars. The Department of Transportation later used its eminent domain power to take a portion of the property while providing Mako with compensation of around $320,000. The remaining property was 4.41 acres in size, and, in 2015, the county tax assessor assigned the property a value of $666,000.00. At all relevant times, the property was undeveloped and covered with vegetation.

In August 2015, the voters of Troup County and the City of LaGrange, Georgia approved through resolution a large expansion to the LaGrange-Callaway airport, which included an extension of its runways. In September 2015, the County filed a declaration of taking against Mako's property, declaring that it was using its eminent

domain power to claim an avigation easement over the entire 4.41 acres of the property to allow airplanes to fly over the airspace due to the property's close proximity to the airport and its location within the flight path of the runway. The easement as described included both a restriction on use of airspace above a certain height over the entire contiguous tract and a permanent right of entry to remove objects extending into the airspace and to prevent the erection or growth of any structure or object into the airspace. The easement set out the various heights of the restricted airspace, generally ranging from 725-740 feet, over the different portions of Mako's property. In the declaration, the County estimated that the amount of just and adequate compensation for the taking was $4,500. After the taking, the County cut down 22 trees on Mako's property because they were encroaching into the airspace.

In September 2015, the County filed a petition of taking with the superior court. Mako timely filed a notice of appeal of the declaration and petition of taking, invoking its right to a jury trial to determine the amount of just and adequate compensation. Before trial, the County filed a motion for partial summary judgment, arguing that Mako was not entitled to consequential damages as part of its recovery because the easement that the County sought to take covered the entire property, and

3

there was therefore no "remainder" of the property that was unaffected. The trial court denied the motion, concluding that there was a remainder of the property that was not claimed by the easement: namely, the area of the property from the ground up to the height restrictions claimed. The trial court concluded that "[a]s a practical matter, virtually all damages flowing from an Avigation Easement are dimunition in value damages to the remainder of the property not taken . . . inasmuch as the property owner rarely has occasion to actually use the airspace that is over 700 feet above their property. The real taking is not the airspace but the negative effect on the fair market value of the real estate beneath the easement."

At trial, both parties brought in appraisers to testify on the appropriate amount of compensation for the condemned property. While both appraisers concluded that there was a remainder tract not subject to the easement, their final valuations differed. The County's appraiser testified that the property was worth $149,738 before the condemnation and was worth $145,246 after the condemnation, attributing $4,492 of the reduction in value as the value of the direct taking and opining that there were no consequential damages to the remainder of the property. Mako's appraiser, however, testified that the property was worth $1,102,500 before the condemnation and was worth $705,600 afterward, for a total reduction in value of $396,900. Mako's

4

appraiser attributed $220,500 of that loss to the direct taking of the easement and the remaining $176,400 as consequential damages to the remainder of the property.

Over the County's objection, the trial court instructed the jury to consider both direct and consequential damages. The trial court defined direct damages as damage "to the property actually taken," meaning "the actual value of the loss." The trial court defined consequential damages as damage to "the property the owner has left after the part the Condemnor takes or uses is subtracted," meaning "the difference between the value of the remaining property immediately before the taking and its value after the taking" or "the decrease, if any, in the fair market value of this remainder in its circumstance just prior to the time of the taking compared with its fair market value in its new circumstances just after the time of the taking."

Based on the evidence presented at trial, the jury returned a general verdict of $233,100 for Mako. The jury's verdict did not specify the amounts of direct or consequential damages that were awarded, nor did the verdict form ask the jury to split their verdict into direct or consequential damages. After trial, Mako moved for an award of attorney fees under both OCGA §§ 9-15-14 (a) and (b). The trial court denied the motion for attorney fees. The County timely appealed from the final

judgment, and we granted Mako's application for a discretionary appeal from the order denying its request for attorney fees.

*Case No. A19A1497*

1. As its first enumeration of error, the County argues that the trial court erred in denying its motion for partial summary judgment on the issue of consequential damages. Because the issue of consequential damages was addressed at trial, however, any review of the denial of the County's motion for partial summary judgment is now moot. *Talmadge v. Talmadge*, 241 Ga. 609 (1) (247 SE2d 61) (1978); *Yetman v. Walsh*, 282 Ga. App. 499, 500-501 (2) (639 SE2d 491) (2006). We will instead review the County's arguments as part of its challenge to the jury instructions in Section 2.

2. The County next argues that the trial court erred in instructing the jury on consequential damages because the claimed easement of the airspace, combined with the access rights over all the property, means that there is no "remainder" of the property that would warrant the imposition of consequential damages. The record shows that any alleged error in instructing the jury was harmless, and so we uphold the jury's verdict.

"We review a trial court's jury instructions as a whole, de novo, for legal error." (Citation omitted.) *Brown v. Tucker*, 337 Ga. App. 704, 713 (4) (788 SE2d 810) (2016). "[T]he party challenging the instruction must establish that the instruction was both legally erroneous and harmful." (Citation omitted.) *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 24 (1) (645 SE2d 536) (2007). "A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for a new trial unless it is apparent that the jury could not have been misled by it." (Citation omitted.) Id. at 27 (1).

Under the Georgia Constitution, "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. III, Par. I. "[I]n Georgia, each condemnee must be paid for what he has lost, not for what the condemnor has gained." *Fulton County v. Funk*, 266 Ga. 64, 65-66 (463 SE2d 883) (1995); see also OCGA § 51-9-2 (the "bare right to possession of lands shall authorize their recovery by the owner of such right, as well as damages for the withholding of such right."); *Dept. of Transp. v. Gunnels*, 255 Ga. 495, 499 (5) (340 SE2d 12) (1986) (Weltner, J., concurring) ("Just and adequate compensation means that the owner must be made whole, to whatever

extent he has been damaged by virtue of the taking."). Georgia law also provides that the rights of owners of realty includes "title both downwards and upwards indefinitely." OCGA § 51-9-9.

> Where a portion of property is taken for a public use, the condemnee is entitled to compensation for consequential damages to the remainder caused by the taking . . . Generally speaking, the measure of consequential damages is the diminution, if any, of the market value of the property not taken, caused by the taking of the part which is taken and the devoting of it to the purposes for which it is condemned.

(Citation omitted.) *Ga. Dept. of Transp. v. Crumbley*, 271 Ga. App. 706, 708 (610 SE2d 663) (2005). In assessing whether an award of consequential damages was appropriate, Georgia law has defined the "remainder" as "property not taken," *Gunnels*, supra, 255 Ga. at 496 (1), and "the owner's land not involved in the easement." *Ga. Power Co. v. Sinclair*, 122 Ga. App. 305 (1) (176 SE2d 639) (1970). In the specific context of when an easement is taken, we have stated that "the remainder, for the purpose of calculating any consequential damages thereto, refers

8

to the remainder of the tract outside the boundaries of the easement." *Ga. Power Co. v. Cannon*, 120 Ga. App. 721, 723 (1) (172 SE2d 142) (1969).[1]

We conclude that, regardless of whether the County is correct that the condemned easement covers the entire property, any instruction on consequential damages was harmless.[2] Our case law is clear that the entire reason that we separate the different types of damages is to avoid a double recovery for the effects of the

---

[1] Although we have not specifically addressed the propriety of consequential damages in the few avigation and aerial easement cases we have decided, we note that these awards appear in each case. See *Savage v. Thomaston-Upson County Office Bldg. Auth.*, 205 Ga. App. 634, 635 (422 SE2d 896) (1992) (award included value of the property or interest taken and consequential damage for avigation easement); *McConnell Drum Svc., Inc. v. DeKalb County*, 205 Ga. App. 234, 235-236 (421 SE2d 749) (1992) (consequential damages allowed in an inverse condemnation proceeding for an aerial easement); *Reed v. City of Atlanta*, 136 Ga. App. 193 (220 SE2d 492) (1975) (consequential damages awarded for avigation easement); *Schoolcraft v. DeKalb County*, 126 Ga. App. 101 (189 SE2d 915) (1972).

[2] We note that, in a previous case involving a dispute about the scope of an easement and, consequently, the boundaries of the "remainder," this Court concluded that the parties' two clashing theories "became an evidentiary question to be determined by the jury as to which, in fact, was the valid one on which to base the proper measure of consequential damages to the remainder." *Dept. of Transp. v. Pilgrim*, 175 Ga. App. 576, 579 (3) (333 SE2d 866) (1985); see also *Franklin County v. Ayers*, 228 Ga. App. 817, 817-818 (493 SE2d 28) (1997) (factual dispute about the boundaries of adjacent properties created issue for jury resolution as to whether consequential damages were appropriate). As mentioned above, both appraisers testified that there was a remainder that would give rise to consequential damages, and the County did not follow up on the trial court's suggestion to have the jury determine, by a special verdict, whether there was a "remainder" in this case.

easement or partial taking on the owner's property value. *Cannon*, supra, 120 Ga. App. at 723 (1) ("[T]o allow the residual ownership rights remaining in the burdened strip to again be included in the entire tract and be defined as the remainder for the purpose of calculating consequential damages to the remainder would be to allow a double recovery as to the easement strip."); see also *Ga. Northeastern R. Co., Inc. v. Lusk*, 277 Ga. 245, 246 (1) (587 SE2d 643) (2003) ("Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole.") (citations omitted); *Gunnels*, supra, 255 Ga. at 497 (3) ("Because the charge raises a substantial possibility that it might have been understood by the jury to authorize a double recovery, the case must be reversed, and a new trial held."); *Habersham Downs Homeowners Assn., Inc. v. Dept. of Transp.*, 212 Ga. App. 686, 688-689 (2) (442 SE2d 868) (1994) (condemnee was not entitled to both consequential damages for diminution in value of property and to have the condemnor construct improvements so as to eliminate that diminution in value).

Here, however, neither appraiser used a method of calculating the damages that would have resulted in a double recovery for any of the effects of the easement. Both

appraisers testified that they calculated the value of the "direct damages" as the direct value of the air rights and that they calculated the value of the "consequential damages" as the effect on the property on the ground. Also, neither appraiser valued the air rights by reference to the effect on the property on the ground, but the two each kept their analyses of each category of damages separate. Therefore, even if the easement indeed covered the entire property as the County urges, the "consequential damages" that each appraiser testified to would not simply disappear. These damages would still need to be accounted for as part of the market value lost due to the claiming of the easement.

Ultimately, the County's appraiser testified that Mako had in its possession a property worth $149,738 before the taking and that Mako had in its possession a remnant property worth $145,246 after the taking. Mako's appraiser testified that Mako had in its possession a property worth $1,102,500 before the taking and that Mako had in its possession a remnant property worth $705,600 after the taking. Whether the damages are denominated as direct or consequential, the differences between these numbers ($4,500 and $396,900 respectively) show the total amount of property value that each appraiser opined was ultimately taken from Mako by the County, and, therefore, the amount that each appraiser opined that Mako must be paid

11

to be made whole.[3] The jury's verdict of $233,100 was also approximately halfway between these two numbers. The record thus confirms to us that there was no improper double recovery, and so we find no reason to disturb the jury's verdict. See *Sinclair*, supra, 122 Ga. App. at 306 (no double recovery where "witnesses did not testify as to the value of the easement taken and add such value to the total depreciated value of the land as in *Cannon*."). Compare *Georgia Power Co.*, supra, 120 Ga. App. at 722 (1) (double recovery where testimony was admitted as to diminished value of the strip of property taken and also, as to the diminished value of the entire tract pertaining to consequential damages); *Gunnels*, supra, 255 Ga. at 497 (3) ("substantial potential" that charge might be understood by jury as authorizing double recovery where trial court instructed the jury regarding both consequential damages to the remainder and damages for the part of the land actually taken, defining the latter as the difference between the market value of the *whole* lot just before the taking and the market value of the *whole* lot immediately after the taking, since logically there is no whole lot after the taking, but only a remnant of what was originally vested in the owner).

---

[3] There was no testimony presented that Mako suffered any damages from the taking other than loss of property value.

12

3. Next, the County argues that the trial court erred in allowing evidence of a "runway protection zone" that extended into the property at issue, alleging that the evidence was not relevant (as it was not part of the easement or declaration of taking) and that the evidence improperly confused the jury as to what constituted the "taking" to be valued. We disagree.

"The admissibility of evidence lies in the trial court's discretion, and the appellate court reviews evidentiary rulings under the abuse of discretion standard." (Citation omitted.) *Toler v. Ga. Dept. of Transp.*, 328 Ga. App. 144, 145 (761 SE2d 550) (2014). In a condemnation action, a jury is allowed to consider "all the elements reasonably affecting value." *Dept. of Transp. v. Swanson*, 191 Ga. App. 752, 755 (4) (382 SE2d 711) (1989). In doing so, the jury may consider evidence of proposed or possible future uses of the land. *Pilgrim*, supra, 175 Ga. App. at 578 (2).

> The trial court has wide discretion to admit testimony of questionable relevance. In fact, it has long been the policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective minds in determining the just and adequate compensation to be paid the condemnee.

(Citations and punctuation omitted.) *Henry County Water & Sewer Auth. v. Adelson*, 269 Ga. App. 206, 207 (1) (603 SE2d 714) (2004).

13

According to the testimony at trial, the runway protection zone was created and mandated by local ordinance in compliance with regulations set out by the Federal Aviation Administration ("FAA"). The protection zone ordinance mandates that no storage of hazardous materials or places where large amounts of people would congregate can be constructed within 1,700 feet of the end of a runway. Because of the new extended runways at the LaGrange-Calloway airport, a portion of Mako's property is now within this zone. In fact, because of the recent runway expansion, the protection zone now extends into the most desirable portion of the property for development purposes. Because this ordinance clearly limits the potential uses for the property at issue, and especially in light of the large disparity between the amounts that the County and Mako believed the property to be worth, evidence of the existence of the runway protection zone was relevant and admissible for the purpose of allowing the jury to determine what the baseline value of Mako's property was before the taking. *Adelson*, 269 Ga. App. at 207 (1); *Swanson*, 191 Ga. App. at 755 (4); *Pilgrim*, supra, 175 Ga. App. at 578 (2).

Moreover, we conclude that the evidence of the exclusion zone did not unfairly confuse the jury as to what they were supposed to be evaluating. There was no testimony from either appraiser that they factored the protection zone into their

14

valuation of the easement or in their valuation of the effect of the taking on the remaining property. Mako also clearly stated in its closing argument that the runway protection zone was not part of the taking that the jury was asked to evaluate. While the trial court did question one of the witnesses about the runway protection zone, the court's question entirely pertained to the effect of the zone on the property's baseline value, and the question reflected no confusion as to what constituted the "taking" that the jury was supposed to value. Thus, we cannot say that the trial court abused its wide discretion in allowing this evidence to be placed before the jury.

*Case No. A19A1649*

1. Mako cross-appeals from the final judgment, arguing that the trial court erred when it denied its request for attorney fees. Mako first contends that it was entitled to attorney fees under OCGA § 9-15-14 (a) because the County relied on a fundamentally flawed appraisal in initially offering only $4,500 as compensation for the taking. The trial court did not abuse its discretion by denying attorney fees because the County made a plausible argument based on case law and because it submitted competent evidence to support its position.

> In any civil action in any court of record of this state, reasonable and
> necessary attorney's fees and expenses of litigation shall be awarded to

15

any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

OCGA § 9-15-14 (a). We affirm a ruling on a request for attorney fees under OCGA § 9-15-14 (a) if there is any evidence to support it. *Shiv Aban, Inc. v. Ga. Dept. of Transp.*, 336 Ga. App. 804, 814-815 (2) (784 SE2d 134) (2016).

Mako argues that the County's initial appraisal that was presented as part of its declaration of taking was likewise inherently flawed because of four specific points: (1) it did not account for the runway protection zone required by the local ordinance; (2) it did not specify a uniform height restriction applicable throughout the easement; (3) it underestimated the number of trees needing to be removed; and (4) it failed to properly evaluate the portion of the land in the flood plain.

At trial, however, the County's appraiser testified that the majority of the property was in a flood plain (according to a professional survey and FEMA maps), and he explained that "generally people don't build structures in floodplains." Because of the significantly reduced number of uses for that land, he opined that the value of the floodplain land was only $23,000. The County's appraiser further

testified that, while 22 trees ultimately had to be removed to accommodate the height restrictions instead of the four that were initially identified, the removal of the trees actually enhanced the value of the land to potential developers because the property was still undeveloped. Finally, the County's appraiser testified that the height restrictions were not burdensome because the zoning laws for Mako's property restricted the height of buildings to well below the altitude covered by the easement, and he also testified that "[i]n practicality, no one's going to put a building out there probably any higher than 20 feet." In addition, the County has a credible argument that the height restrictions could not have been stated uniformly, but were necessarily imposed relative to the property's differing elevations and the distance of each point of the property from the runway.

Thus, there was at least some factual evidence to support the County's position on each of these points, and so we cannot say that the County's appraisal was "so flawed that it could not be reasonably believed that the trial court would accept the position." We therefore affirm the trial court's denial of fees in this respect.

2. Mako similarly argues that the trial court erred by not allowing attorney fees under OCGA § 9-15-14 (b) because the County's appraisal lacked substantial justification. We disagree.

The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. As used in this Code section, lacked substantial justification means substantially frivolous, substantially groundless, or substantially vexatious.

OCGA § 9-15-14 (b). "An award under OCGA § 9-15-14 (b) is entirely within the discretion of the trial court after considering all the facts and law." (Citations omitted.) *Campbell v. Landings Assn., Inc.*, 311 Ga. App. 476, 483 (6) (716 SE2d 543) (2011). "[A]n award of attorney fees under OCGA § 9-15-14 (b) is not warranted where the claim at issue is dependent upon the resolution of a factual or legal dispute." (Citations omitted.) *Lee v. Park*, 341 Ga. App. 350, 353 (1) (800 SE2d 29) (2017).

Here, there was a fiercely contested dispute as to the value of just compensation to be paid to Mako based on many different factual disputes and factors affecting the potential uses and value of the property. As stated in the above section, even if the County's appraisal resulted in a rather lowball amount, there was at least

18

some factual basis to support the County appraiser's opinion as to the amount of the damages to be paid to Mako, and thus, based on these genuine factual disputes, we cannot say that the trial court abused its discretion in denying attorney fees. See *Dept. of Transp. v. Woods*, 269 Ga. 53, 55 (494 SE2d 507) (1998) ("[F]ees are not recoverable in condemnation cases under OCGA § 9-15-14 (b) merely because the verdict exceeds the condemnor's estimate, based upon valid evidence, of fair market value.").

Accordingly, we conclude that (1) there was no reversible error in how the trial court instructed the jury; (2) the trial court did not abuse its discretion in allowing the evidence of the runway protection zone; and (3) the trial court did not abuse its discretion in denying Mako's request for fees. We therefore affirm.

*Judgment affirmed in Case No. A19A1497; Judgment affirmed in Case No. A19A1649. Rickman and Reese, JJ., concur.*